## National Surety Company v. Rives' Guardian.

(Decided April 21, 1915.)

## Appeal from McCracken Circuit Court.

1. Judicial Sales—Infant's Land—Filing of Title Papers.—In an action under sub-section 3 of Section 489 of the Civil Code of Practice, to sell an infant's land for his support and maintenance, the failure to file the title papers under which the property of the infant was held, as is required by Subsection 2 of Section 492 of the Civil Code of Practice, did not make the judgment void; it was erroneous only, and the error cannot be taken advantage of collaterally in another suit.

2. Guardian and Ward—Succeeding Guardian's Right to Sue Former Guardian.—Where a guardian was removed by the county court and failed to make a settlement therein, although directed so to do, the succeeding guardian had the right to file an action in the circuit court against the former guardian to require a settlement and to enforce the payment of whatever amount might there be found to be due; and subsequent proceedings in the county court could not affect the prosecution of the action brought in the circuit court for a settlement.

3. Principal and Surety—Liability of Surety—General Rule.—As a general rule, sureties upon official bonds are not concluded by a decree or judgment against their principal unless they have had their day in court, or an opportunity to be heard in their defense; but administrators' bonds form an exception to this general rule, and the sureties thereon in respect to their liability for the default of their principal, are classed with such sureties as covenant that their principal shall do a particular act.

4. Principal and Surety—Liability of Surety on Guardian's Bond When Jointly Sued.—But where a guardian and his surety were jointly sued for a settlement of the guardian's accounts, a default judgment against the guardian did not deprive the surety of any of its valid defenses, since it was at all times contesting the plaintiff's right to recover, and was bound only under the judgment fixing its own liability upon a trial of the merits.

EATON & BOYD for appellant.

BRADSHAW & BRADSHAW for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Affirming.

In 1909 E. W. Whittemore qualified as the statutory guardian of his stepson, Harold Milburn Rives, with the appellant, the National Surety Company, as surety upon his bond.

The infant owned a small farm in McCracken County; and it becoming necessary to use the proceeds of the farm for the support and maintenance of his ward, Whittemore, as guardian, brought an action in January, 1910, under Sub-section 3 of Section 489 of the Civil Code of Practice, to sell the infant's farm for that purpose. That action proceeded regularly to a sale, which was held in October, 1910. The sale netted $880.69, which was turned over to Whittemore, the guardian.

On December 9th, 1913, Whittemore was removed as guardian, and the appellee, the Mechanics Trust & Savings Bank, was appointed guardian, in his stead, of the infant Harold Milburn Rives.

On March 12th, 1914, the Mechanics Trust & Savings Bank, as guardian, brought this action against Whittemore and the National Surety Company, his surety upon the guardian's bond, to recover the $880.69 derived from the sale of the land, which had been paid to Whittemore in 1910.

The petition prayed judgment against both defendants for $1,070.00, that being the aggregate of the $880.69, with the interest included. Whittemore failed to defend the action; and, on May 2nd, 1914, a default judgment was rendered against him for $1,070.00, as prayed in the petition.

The Surety Company contested the plaintiff's claim, and interposed two defenses: (1) That the judgment and sale in the action to sell the farm, in 1910, were void because the title papers under which the property was held were not filed with the petition, as is required by Sub-section 2 of Section 492 of the Civil Code of Practice; and (2) that by a judgment entered in the McCracken County Court on May 16th, 1914, and subsequent to the institution of this action, Whittemore's liability as guardian had been fixed at the sum of $678.20, and that the surety was liable for no greater sum than that fixed against its principal. A demurrer was sustained to this second plea, and, by an amended answer, the surety specified certain credits to which it claimed Whittemore was entitled, aggregating $435.24, and that it, as surety, was entitled to the benefit of those payments.

An issue was made as to these credits; and, the chancellor having heard the case, gave a judgment against

the surety for $916.15. From that judgment the surety company prosecutes this appeal.

On the other hand, the present guardian has taken a cross-appeal, claiming that it should have had a judgment against the surety for $1,070.00, the amount of the default judgment against Whittemore.

1. Sub-section 2 of Section 492 of the Civil Code of Practice provides as follows:

"492. In an action mentioned in Sub-sections 3, 4 and 5 of Section 489, and in Section 491 * * *

"2. The title papers, or copies of them, under which the property is held, must be filed with the petition."

Appellant insists that the failure to file the title papers in the action by Whittemore, as guardian, to sell the farm, rendered the judgment and sale void; while appellee insists that they were, at most, erroneous only.

We are of opinion there can be no serious doubt upon this question, and that the judgment was, at most, only erroneous. If an appeal had been prosecuted from the judgment, the failure to file the title papers might have furnished a ground for a reversal. Conrad v. Conrad, 152 Ky., 422, 426. But the proceedings having been regular in all other respects, and the infant defendant having been brought before the court and a defense made for him in all respects as is required by the Civil Code of Practice, the failure to file the title papers under which his land was held, was error only, which cannot be taken advantage of collaterally in another suit.

2. The order of the McCracken County Court, entered on May 16th, 1914, fixing the liability of Whittemore, as guardian, at $678.20, further recites that Whittemore made a settlement as guardian in the county court on December 9th, 1913, which showed he was chargeable with the sum of $1,113.48, and entitled to a credit of $435.38, leaving him indebted in the said sum of $678.20. This record, however, shows no settlement of any kind, unless the recital in the order of the county court above referred to may be treated as a settlement.

Furthermore, said order was not only made after this action for a settlement had been brought against Whittemore, as guardian, but, on May 20th, the appellee, the present guardian, excepted to the settlement made by Whittemore in the county court by specifically setting forth its objections thereto, and asking that

Whittemore be charged with $1,113.48, subject to a credit only of $55.00. It is stipulated in the record that these exceptions were never acted upon; but, in view of the subsequent proceedings in the circuit court, the failure of the county court to act upon the exceptions became unimportant.

Passing these technical questions, and proceeding to the merits of the case, it will be seen that at the time this action was filed no settlement had been made or offered by Whittemore, as guardian, in the county court. Up to that time the county court had made no order respecting the obligation of the guardian to the ward. Evidently, Whittemore not only neglected, but refused, to make a settlement in the county court; and, under this state of facts, the present guardian filed this action in the circuit court against Whittemore and his surety, to require a settlement, and to enforce the payment of whatever amount might be found to be due. Black v. Kaiser, 91 Ky., 422.

As it was not until after this action was brought that a settlement was attempted by Whittemore, in the county court, it would have been impossible for the appellee to sue to surcharge a county court settlement, because none had been made by Whittemore.

Moreover, a settlement made in the county court is only *prima facie* correct, and can be corrected and surcharged by a suit brought in the circuit court for that purpose. Kentucky Statutes, Sec. 2038; Tanner v. Skinner, 11 Bush, 120; Commonwealth v. Graves C. B. & T. Co., 159 Ky., 455.

This action in equity by the present guardian against the former guardian to compel him to settle his accounts and pay the amount due by him, was the proper remedy. Kentucky Statutes, Sec. 2039; Commonwealth v. Henshaw, 2 Bush, 286. And, having been properly begun, no subsequent proceedings in the county court could defeat the action.

The parties fully recognized this rule of procedure in this case by trying it upon its merits regardless of the subsequent order of the county court. The circuit court had jurisdiction to so try the case; and since the judgment is sustained by the proof, it will not be disturbed.

3. As a general rule, sureties upon official bonds are not concluded by a decree or judgment against their principal, unless they have had their day in court, or an

opportunity to be heard in their defense; but administrators' bonds seem to form an exception to this general rule, and the sureties thereon in respect to their liability for the default of the principal are classed with such sureties as covenant that their principal shall do a particular act.    Brandt on Suretyship and Guaranty, Sec. 532.

In McCalla v. Patterson, 18 B. M., 201, the court said:

"The responsibility of the surety in an administrator's bond is incidental and collateral to that of the principal, and a judgment in favor of the creditors against the administrator concludes the surety as to the extent and character of the debt thus ascertained, and cannot be questioned or reviewed in a suit on an administrator's bond."

The rule is stated as follows in 21 Cyc., 239:

"In the absence of fraud or mistake a final judicial settlement by a guardian is in most States conclusive on the sureties as to the existence and amount of the guardian's liability to the ward, even where the sureties were not made parties to the proceeding or notified thereof.    A final settlement is also conclusive in favor of the sureties as to all matters embraced in the adjudication, in the absence of fraud.    Current reports and settlements by the guardian are not conclusive either in favor of or against his sureties."

See also 32 Cyc., 136.

The above rule was recognized in Hobbs v. Middleton, 1 J. J. M., 176; Hindman v. Lewman, 23 Ky. L. R., 179, 61 S. W., 470; National Surety Co. v. Arteburn, 110 Ky., 832; and in U. S. F. & G. Co. v. Russell, 141 Ky., 603.

But in the case at bar, to which both the guardian and his surety were defendants, the surety was defending at all times; it controverted the facts upon which the default judgment went against its principal; and the failure of Whittemore to file an answer, and his permitting a default judgment to go against him in the case against the surety, could not deprive the surety of any of its valid defenses.    When called upon to defend, it had the right to do so, and was bound only under the judgment therein fixing its liability.    The purpose of the suit against the surety was to fix its liability upon the merits; not by the subsequent failure of Whittemore to defend the action against him.

The circuit court did not, therefore, err in refusing to treat the default judgment against Whittemore as conclusive of the surety's liability upon the bond.

Judgment affirmed upon the original and cross-appeal.