### Kratz v. Slaughter's Exrs.

(Decided October 3, 1919.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Wills—Construction—Power of Sale.—Under a will devising certain real estate and other property to the Southern Presbyterian Church, and appointing trustees "with absolute discretion to determine to what causes and activities of the Southern Presbyterian Church the funds bequeathed to it herein shall be devoted, and in what proportions, except that none shall be expended for theological seminaries," the trustees were given the implied power to sell the real estate, since the discretion conferred could not be fully exercised without a sale of the property.

2. Charities—Devises—Legacies—Certainty.—Devises and bequests of certain property to the Southern Presbyterian Church with "absolute discretion" in the named trustees, "to determine to what causes and activities of the Southern Presbyterian Church the funds bequeathed to it herein shall be devoted and in what proportions, except that none shall be expended for theological semi-

naries," were sufficiently certain to be valid under section 317, Kentucky Statutes.

R. C. LOGAN for appellant.

HUMPHREY, CRAWFORD, MIDDLETON & HUMPHREY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Fannie Latham Slaughter, a resident of Louisville, died leaving a will which was probated by the Jefferson county court on March 10, 1919. Charles R. Hemphill and John J. Davis qualified as executors and trustees under her will. On March 15, 1919, Paul Kratz entered into a contract with the executors and trustees, by which he agreed to purchase from them a house and lot, known as 1145 Cherokee road, for the sum of $5,000.00. One of the terms of the purchase was that the title to the property should be clear, marketable and unencumbered. Kratz declined to comply with the contract of purchase on the ground that the executors and trustees had no power to convey the property. Thereupon, suit was brought for specific performance, and judgment was rendered granting the relief prayed for. Kratz appeals.

The material parts of the will are as follows:

"1. It is my desire that my just debts and last illness and funeral expenses be paid as promptly as practicable.

"2. I give, will, devise and bequeath my residence, 1145 N. W. corner Cherokee road and Slaughter ave., at present occupied by Mrs. A. D. McCulloch, to my residuary legatee.

"3. I give, will, devise and bequeath all vacant and improved property that I may own at my death to my residuary legatee, the Southern Presbyterian Church, U. S. on Glenmary ave., north of Everett ave.

"4. When Glenmary avenue shall be extended N. E. of Willow ave., I will, give, devise and bequeath 225 feet of ground on the S. E. corner of Glenmary ave. and Ray ave. for an uncut stone chapel to be erected in the center of 75 feet on the corner and later an uncut stone church in the center of 100 feet adjoining, and a two story and a half uncut stone parsonage in the center of 50 feet ad-

joining the church, all buildings to be set 40 feet from property line in Glenmary avenue, all buildings to be of Gothic architecture. I desire the above plans carried out in detail.

"5.   I give, will, devise and bequeath all the ground I may own at my death on Glenmary avenue, northeast of Willow, and the ground I own on Basset avenue to be sold and proceeds used in paying for the construction of the chapel, church and manse on Glenmary and Ray avenues. I have requested the Rev. Charles R. Hemphill and Mr. John J. Davis to act as my trustees and executors, and they will dispose of the ground speedily as circumstances will permit either at public or private sale, and they are authorized to make all necessary deeds. All the above described and bequeathed property is to be used for residence property only, not less than two story and a half houses and all to be set back forty feet from the property line."

(Clauses 6, 7, 8, 9, 10 and 11 relate to property devised or bequeathed to others than the Southern Presbyterian Church.)

"12.   I give, will, devise and bequeath my remaining Green street property, and all bonds, stocks and notes, real and personal property not otherwise disposed of to my residuary legatee, the Southern Presbyterian Church, U. S. to be disposed of by the trustees and executors named in my will as therein provided.

"13.   Should any contest arise over any of the provisions of my will, I request my lawyer, trustee and executor to defend this my last will and testament through the courts, and if necessary to the Supreme Court; having disposed of my property as I pleased, I wish all the requirements complied with. Said trustees and executors shall receive the same compensation as real estate agents, and no bond or security shall be required of them. Should either of them die, the chancery branch of the Jefferson circuit court shall appoint a lawyer, regular male member of the Southern Presbyterian Church, U. S. and a minister of the same church to take place of the deceased, to carry out the above trusts.

"Any other estate not disposed of by me, I give, will, devise and bequeath to the trustees and executors before named upon the trusts set forth above. The trustees named herein, or their successors in office, shall have the

absolute discretion to determine to what causes and activities of the Southern Presbyterian Church the funds bequeathed to it herein shall be devoted and in what proportions, except that none shall be expended for theological seminaries, and if within the time of five years from my death, it should not seem to them wise to erect the chapel, church and manse provided for herein in clause 4, then said trustees are authorized and directed to sell all of said ground and apply the proceeds thereof to the causes of the Southern Presbyterian Church in the same manner and to the same extent as the other property devised for the benefit of said Southern Presbyterian Church."

The property in question was devised by clause 2 of the will, and no express power is given to the executors and trustees to sell this particular piece of property. However, it is the rule that, even though no express power of sale is contained in the instrument creating a trust, such a power will be implied when necessary in order to carry out the purpose of the trust and the duties imposed upon the trustee. 39 Cyc. 351. To that end no particular form of words is necessary. Any words which show an intention to create such power, or which impose duties upon a trustee that he cannot perform without a sale, will necessarily create a power of sale in the trustee; Perry on Trusts, sec. 766; Cherry v. Greene, 115 Ill. 591, 4 N. E. 257; Illinois Christian Missionary Society v. American Christian Missionary Society, 277 Ill. 193, 115 N. E. 118; and for a like reason a power of sale may be implied from words which confer an authority or discretion respecting the property in question, which the trustees cannot fully exercise without a sale of the property.

In our opinion the controlling provision of the will is the second paragraph of clause 13, which gives to the trustees named therein, or their successors in office, "the absolute discretion to determine to what causes and activities of the Southern Presbyterian Church the funds bequeathed to it herein shall be devoted, and in what proportions, except that none shall be expended for theological seminaries." After providing that, if within the time of five years from the death of the testatrix, it should not seem wise to erect the church, chapel and manse provided for in clause 4, the paragraph concludes by saying, "Then said trustees are authorized and direct-

ed to sell all of said ground and apply the proceeds thereof to the causes of the Southern Presbyterian Church in the same manner and to the same extent as the other property devised for the benefit of said' Southern Presbyterian Church.'' Since the trustees were authorized to apply the proceeds of the chapel, church and manse ''in the same manner and to the same extent as the other property devised for the benefit of said Southern Presbyterian Church,'' we think it clear that the word ''funds'' was not used in the sense of ''personal estate'' but was intended to include all property of every kind devised to the Southern Presbyterian Church. That being true, the trustees were given the absolute discretion to determine to what causes and activities of the Southern Presbyterian Church all the property devised to it, including the property in question, should be devoted, and in what proportions, with the exception that none of it should be expended for theological seminaries. Under this authority they have the absolute right to determine that one-third of the property in question shall be devoted to Sunday schools, one-third to church construction and one-third to missions, or to apportion the property to any other activities that they might desire. Manifestly, this discretion could not be fully exercised without a sale of the property, and we therefore conclude that the words conferring the discretion were sufficient to create a power of sale.

Another contention is that the devise to the Presbyterian church is void because not sufficiently specific to come within the provision of section 317, Kentucky Statutes, which provides in part that all devises for charitable purposes shall be valid if the devise shall point out with reasonable certainty the purposes and beneficiaries of the charity. In construing this section, it has been held that as it is necessarily uncertain and indeterminate who the ultimate beneficiaries of the charitable trust are to be, they cannot be named or selected in advance; and if the class of beneficiaries be named in general language or outline, leaving to the trustee the discretion to select from the class named as beneficiaries the immediate objects of the testator's benefaction, the trust is sufficiently certain. Following this rule, a bequest of a fund ''for educating some poor orphans in this county, to be selected by the county court,'' was held sufficiently specific,

Moore's Heirs v. Moore's Devisees, 4 Dana 354. In Crawford's Heirs v. Thomas, et al., 114 Ky. 484, 54 S. W. 197, 55 S. W. 12, a bequest of a fund to a trustee to be expended "in securing an evangelist," and "in the advancement of the principles of primitive Christianity as taught by the Christian church," was upheld. In Thompson's Ex'r v. Brown, 116 Ky. 102, 75 S. W. 210, 62 L. R. A. 398, 105 A. S. R. 194, the court sustained a bequest of a fund to an executor to be distributed "to the poor at his discretion." In Casey v. Fidelity Trust Co., 131 Ky. 609, 115 S. W. 739, a charitable trust in a will, providing that property should be held by a specified trust company as an endowment fund for a specified bible society, and that the interest on the endowment should be paid to the society to be used "not in paying pre-existing debts of the society, but in distributing bibles to the destitute of the earth," was held sufficiently definite. And, in the recent case of Miller v. Tatum, 181 Ky. 490, 205 S. W. 557, a bequest of property "to foreign missions: In this respect I regard Japan as an important field, and if Brother M. is then living and in Japan, regard him as a good and worthy man to invest the money," was held valid, as was also a bequest of money to "be sent to the country and destitute places, that the poor may have the gospel preached to them." In the present case, the testatrix selected the Southern Presbyterian Church as the object of her bounty, and invested her executors and trustees with the discretion to select the particular activities of the church to which the property bequeathed and devised should be applied, and in our opinion the trust is sufficiently definite, and is therefore valid.

Judgment affirmed.